[Cite as *In re T/R/E/M Children*, 2019-Ohio-1427.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: T/R/E/M Children | : | APPEAL NO. C-180703 |
| | | TRIAL NO. F13-1187z |
| | : | |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 17, 2019

*Roger W. Kirk,* for Appellant Mother,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury,* Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Marianne Jones Ford*, Assistant Public Defender, Guardian ad Litem for minor children.

**BERGERON, Presiding Judge.**

{¶1}   In this parental termination case, guardians ad litem appointed for both Mother and her children took the position below that her parental rights should be terminated.  Those conclusions comport with the evidence contained in the record, which chronicles a multitude of problems that ultimately led to the termination decision.  While the circumstances are certainly unfortunate, we fully believe that the best interests of the children will be served by placing them in the custody of the Hamilton County Department of Job and Family Services ("HCJFS"), and we accordingly affirm the trial court's decision.

I.

{¶2}   This case involves a mother and her eight young children. Both fathers are effectively out of the picture—neither showed any interest in reunification services and both failed to visit their children in over a year.

{¶3}   HCJFS first came into contact with Mother and her children after two of her children were diagnosed with "failure to thrive" and were so dangerously underweight that they had to receive food through IVs to help gain weight.  After this incident, HCJFS met with Mother to discuss the children's medical needs, emphasizing that the health of the two malnourished children would not get better unless Mother took the children to appointments and picked up the prescribed formula.  Notwithstanding this meeting, the weight of the two children failed to improve; at one point, they weighed so little that they fell off the applicable growth chart.  The doctor's urgent requests to ensure that the children met their physical caloric needs and to obtain the prescribed formula appeared continually lost on Mother.

{¶4}   After these events, in May 2013, HCJFS filed a complaint for temporary custody, alleging that four of Mother's children were abused, neglected,

2

and dependent. During the pendency of the case, Mother gave birth to her fifth child, and HCJFS amended the complaint to include that child. At various hearings, the magistrate heard testimony regarding Mother's inability to address the special needs of her children, which jeopardized their health. In November 2013, the magistrate adjudicated two of the children abused and neglected and all other children dependent, thereby granting HCJFS temporary custody of all five children.

{¶5} Less than a year later, Mother regained custody of her children with orders of protective supervision for a 19-month stint. However, after an incident involving her six- and seven-year-old children, where employees of Findlay Market found the children wandering alone afterhours, HCJFS filed for temporary custody of Mother's children for the second time. Mother was subsequently convicted for child endangerment for this episode.

{¶6} By August 2016, the magistrate had adjudicated Mother's then-seven children dependent, based on Mother's continued inability to grasp the extraordinary needs of her children. In addition to what we have surveyed above, Mother's oldest child exhibited significant behavioral problems, including assaulting school staff and attempting to flee the school, and he exhibited emotional disabilities and ADHD symptoms. Despite these problems, once necessitating the child's hospitalization, Mother described the child as mature and entrusted him to care for his siblings. She also rebuffed the need for prescribed medication to address his conditions.

{¶7} Mother responded in similar vein to the special needs of her two children who have cerebral palsy, necessitating speech, occupational, and physical therapy. Mother contested their attendance at therapy so vehemently that the court intervened to obtain the needed medication and surgeries. On another occasion, Mother failed to pick up their prescribed leg braces. Based on Mother's reoccurring

incapacity to address her children's needs, the court granted HCJFS temporary custody once again of all seven children.

{¶8} In June 2017, seeing no improvement on the horizon, HCJFS filed for permanent custody of all Mother's children, adding Mother's eighth child to the complaint after his birth. The extensive hearings included similar testimony concerning Mother's inability to understand or respond to the special needs of her children. Uncontrolled behavioral problems arose as well. During scheduled visits at Family Nurturing Center, for instance, Mother could not manage the children's often violent behaviors, including hitting, kicking, running away from the visiting space, and throwing things at other siblings. After the Family Nurturing Center staff had to place two of the children in a therapeutic hold on multiple occasions to prevent injury to themselves and others, the visits were split between the eight children to provide a more manageable and safer environment. But Mother's behavior became disruptive at times as well, and combined with the children's behavioral problems, prompted Family Nurturing Center to suspend visits for a time.

{¶9} After considering the testimony concerning Mother's failure to comprehend the extraordinary needs of her children and inability to manage the children, even after HCJFS provided services to address those issues, the magistrate granted permanent custody to HCJFS. Upon reviewing the magistrate's decision and hearing from Mother's guardian ad litem that she does not "believe it's in the mother's best interest to have the children remanded to her," the juvenile court upheld granting permanent custody to HCJFS. Mother appeals this order terminating her parental rights, claiming it is in the best interests of the children to be raised by her.

II.

{¶10} On appeal, Mother's sole assignment of error challenges the weight and sufficiency of the evidence presented to support the juvenile court's decision to award permanent custody to HCJFS. A juvenile court's determination on a motion for permanent custody must be supported by clear and convincing evidence. *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46. We review the weight and sufficiency challenges through slightly different lenses.

{¶11} When reviewing a challenge to the manifest weight of the evidence, we must find that the juvenile court lost its way and created such a manifest miscarriage of justice that we must reverse the judgment and order a new hearing. *In re A.B., G.B., and J.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 16. In reviewing a challenge to the sufficiency of the evidence, we must scrutinize the record to determine if the juvenile court had sufficient evidence on each element before it to satisfy the clear-and-convincing standard mandated under R.C. 2151.414. *Id.* at ¶ 15.

{¶12} We start from the premise that children have a basic right to be raised by their natural family, and for that reason, termination of parental rights should be invoked only as a measure of last resort. R.C. 2151.414 supplies the statutory framework for us to evaluate the propriety of the termination of parental rights. Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to an agency if the court determines by clear and convincing evidence that (1) permanent custody is in the child's best interest and (2) one of the circumstances provided in R.C. 2151.414(B)(1)(a) through (e) applies. *In re J.G.S.*, 1st Dist. Hamilton Nos. C-180611 and C-180619, 2019-Ohio-802, ¶ 34. The court must consider all relevant factors within R.C. 2151.414(D)(1) to determine whether permanent custody is in the best interest of the child.

{¶13} On the best-interest inquiry, Mother insists that the best interests of the children will be served in her custody because she is a loving parent and she understands the special needs of her children. The juvenile court, however, walked through each of the best-interest factors, and chronicled clear and convincing evidence that granting permanent custody to HCJFS was in the children's best interest.

{¶14} To highlight a few of the factors identified by the juvenile court, the court emphasized Mother's lack of contact with her children. She has not visited her children in over a year (with one exception), and when she did visit previously, she engaged in such disruptive behavior and created such risks of harm to the children that Family Nurturing Center had to suspend all visits for a time because it could no longer offer a safe environment for the visits. *See* R.C. 2151.414(D)(1)(a). More to the point, the children capable of expressing a view declared that they would prefer to remain with their foster families than with Mother, and the GAL appointed for the children echoed that sentiment. *See* R.C. 2151.414(D)(1)(b).

{¶15} The juvenile court also considered the custodial history of the children, emphasizing that seven of the children have been in the temporary custody of HCJFS for more than 12 months. *See* R.C. 2151.414(D)(1)(c). Further, the juvenile court stressed the children's need for legally secure placement based on their young ages and Mother's little progress in understanding or providing for her children's extraordinary needs. *See* R.C. 2151.414(D)(1)(d).

{¶16} Reinforcing this evidence, Mother's guardian ad litem ultimately acknowledged that she agreed with the magistrate's decision and believed permanent custody with HCJFS was in the best interests of the children. *See* R.C. 2151.414(D)(1)(b). While not dispositive, this conclusion is certainly worthy of weight in the best-interest analysis.

{¶17} Turning to the second half of the analysis, the juvenile court elected to utilize R.C. 2151.414(B)(1)(a), finding that the children cannot be placed with either parent within a reasonable time and should not be placed with either parent. To reach this result, the court had to consider the criteria established by R.C. 2151.414(E), which delineates several factors, at least one of which must be present.

{¶18} In this case, the juvenile court found by clear and convincing evidence that following the placement of all eight children outside their home, and despite reasonable case-planning efforts by HCJFS to assist Mother in remedying the conditions that led to the removal, Mother failed to remedy the underlying conditions that prompted the placement at the outset. *See* R.C. 2151.414(E)(1). While Mother asserts that she did everything asked of her under the case plan, R.C. 2151.414(E)(1) concerns itself not with adherence to a case plan, but with the parents' ability to substantially remedy the conditions that caused the children to be removed from their home in the first place. *In re W Children*, 1st Dist. Hamilton No. C-180620, 2019-Ohio-690, ¶ 39 and 41.

{¶19} At the heart of this case lies Mother's inability or failure to address the special needs of her children, in addition to a litany of problems noted above. The record overflows with evidence of the children's significant needs. Malnourishment, cerebral palsy, and behavioral issues have confronted her children. After repeated failures by Mother to attend medical appointments, HCJFS intentionally met with Mother, emphasizing that the children's health depended on Mother getting the children to their scheduled appointments and obtaining their prescribed medication. Yet this advice fell on deaf ears, as the children's weight did not improve and hit a weight so low that it was not on the growth chart. Although the doctors continued to show concern, noting that both children "appeared emaciated" and "showed very

little interaction," Mother repeatedly forgot to pick up the children's prescribed formula.

{¶20} Even after Mother began parenting-education courses, mental-health treatment, and other case-management services, she still did not grasp the significance of addressing her children's needs. The two oldest children both have multiple disabilities, including ADHD, PTSD, and oppositional defiant disorder. In the face of violent behavior by one of the children, Mother continued to claim that he did not need his prescribed medication. Mother's inability to handle her children's significant special needs became even more apparent when visits at Family Nurturing Center were suspended, despite the four or five facilitators present to help control Mother and the children's outbursts.

{¶21} Regardless of the extent Mother utilized and completed the services, clear and convincing evidence supports that Mother demonstrated little or no benefit from them and has not substantially remedied the conditions that caused her children to be removed from her home in the first place. *See* R.C. 2151.414(E)(1).

{¶22} Sufficient evidence supports the juvenile court's findings that one of the conditions set forth in R.C. 2151.414(B)(1) applied to each child. Moreover, we cannot conclude that the court lost its way or committed a manifest miscarriage of justice in resolving that permanent custody be granted to HCJFS based on our review of the record.

{¶23} Following our review of these unfortunate circumstances, clear and convincing evidence supports the juvenile court's findings, and the court's decision is not against the manifest weight of the evidence. We accordingly overrule Mother's sole assignment of error and affirm the juvenile court's judgment.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

       The court has recorded its own entry on the date of the release of this opinion.