[Cite as *In re J.W.*, 2019-Ohio-2730.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: J.W. and H.W. | : | APPEAL NO. C-190189 |
| | | TRIAL NO. F14-172 |
| | : | |
| | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 3, 2019

*Christopher P. Kapsal*, for Appellant Mother,

 *Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Jacqueline O'Hara*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Amanda Robinson*, Assistant Public Defender, Guardian ad Litem for the minor children.

**BERGERON, Judge.**

{¶1}   We confront in this case a parental termination dispute in which Mother did not appear at the hearing as a result of her incarceration.  Although she presents this as a due-process violation, she failed to challenge this issue before the juvenile court on review of the magistrate's order, which limits our review to plain error.  Given that she failed to avail herself of alternative means of appearance (such as by deposition), we cannot say that the trial court committed plain error in proceeding with the hearing notwithstanding her absence.  Our independent review of the record further convinces us that the weight of the evidence supported the juvenile court's determination.  We accordingly affirm the judgment below.

I.

{¶2}   Hamilton County Department of Job and Family Services ("HCJFS") became involved with Mother and her children in 2015.  At that time, it opened a dependency matter based on reports of physical abuse toward the two children concerned in this appeal, J.W. and H.W., along with three of their siblings. J.W. and H.W. were eventually adjudicated dependent and placed under protective supervision of HCJFS, which subsequently escalated to a grant of interim custody and then temporary custody to HCJFS in 2017.   After two extensions of temporary custody, HCJFS ultimately sought permanent custody.

{¶3}   At the August 2018 pretrial conference regarding the custody hearing, Mother's attorney informed the court that, due to pending charges against Mother, he anticipated that Mother would be incarcerated at the time of the hearing and unable to attend.  Counsel accordingly requested a continuance to enable Mother to fully participate in the hearing.  The magistrate denied the request, however, and instructed counsel to secure alternative means for Mother's participation (such as attendance by phone or video)

if she was incarcerated at the time of the hearing. Despite the denial of this request, the court rescheduled the hearing twice, and it eventually took place on October 29, 2018.

{¶4} Counsel's prediction proved accurate, as Mother was serving 90 days' incarceration for smuggling drugs into a detention facility and not due to be released until mid-December 2018. Despite contacting the jail in Ross County (where Mother was incarcerated) in an effort to secure other means for Mother's participation in the October hearing, the jail informed counsel on October 2 that it could not accommodate either transporting Mother to the hearing or telephone participation for Mother. Subsequently, at the October hearing, counsel reiterated the request that the hearing be continued. HCJFS protested yet another delay, emphasizing the multiple reschedulings of the hearing. The hearing ultimately continued without Mother's presence, but she was represented by counsel.

{¶5} At the hearing, HCJFS adduced testimony regarding the children and Mother's participation in her case plan and progress. At the conclusion of the hearing, the magistrate took the matter under advisement and ultimately rendered a decision deeming it in the children's best interests that Mother's parental rights were terminated and permanent custody granted to HCJFS. Mother later lodged objections to the magistrate's decision, which the juvenile court overruled in adopting the magistrate's findings.

{¶6} In the wake of this ruling, Mother now frames two assignments of error on appeal. Initially, she challenges the denial of the continuance of the hearing to ensure her presence as a violation of her due-process rights, and she also challenges both the weight and sufficiency of the evidence underlying the decision terminating her parental rights.

## II.

### A.

{¶7} In her first assignment of error, Mother challenges the denial of the continuance as a violation of her due-process rights by denying her meaningful participation in the permanent-custody hearing. But Mother faces a threshold problem with this argument because she failed to object to the magistrate's denial of the continuance in her objections before the juvenile court, which confines our review of this issue to plain error. *See* Juv.R. 40(D)(3)(b)(iv) ("Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion* * *."); *In re A.J. and S.M.*, 11th Dist. Trumbull No. 2010-T-0041, 2010-Ohio-4553, ¶ 40 ("Such a failure to file an objection to the magistrate's decision on [an] issue waives all but plain error."). Plain error is generally disfavored, however, and applied only in situations in which "error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process * * *." *In re Etter*, 134 Ohio App.3d 484, 492, 731 N.E.2d 694 (1st Dist.1998), quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123, 679 N.E.2d 1099 (1997).

{¶8} On the record before us, Mother cannot satisfy the high showing needed to establish plain error. Due process in parental terminations requires that a parent have notice and an opportunity to be heard before termination of his or her parental rights. *State ex rel. Smith v. Smith*, 75 Ohio St.3d 418, 421, 662 N.E.2d 366 (1996). But that is not an inflexible command that mandates the physical presence of the parent in all circumstances so long as the parent is afforded some meaningful alternative means of participation. *See In re A.N.B.*, 12th Dist. Preble No. CA2012-12-017, 2013-Ohio-2055, ¶ 25 (violation of

incarcerated mother's due-process rights where court terminated her parental rights without her participation at hearing). Such alternative means of participation can satisfy due process when "the [incarcerated] parent is represented by counsel at the hearing, a full record of the proceedings is made, and any testimony that the parent may wish to present could be offered by way of deposition." *In re P.J. and D.M.*, 11th Dist. Ashtabula Nos. 2008-A-007 and 2008-A-0053, 2009-Ohio-182, ¶ 66.

{¶9} Examination of the record here reveals no such violation, and certainly none that would rise to the level of plain error. Despite the denial of the continuance, Mother was represented by counsel at the hearing (and concedes this representation was adequate in her appellate brief). Indeed, the record reflects counsel's active engagement at the custody hearing, both cross-examining witnesses and interposing objections on Mother's behalf. And we have the benefit of a full record of the hearing proceeding. Finally, and perhaps most importantly, Mother makes no showing as to either being prevented from submitting deposition testimony, or as to why she was unable to secure some type of testimony in light of her incarceration. Counsel knew about this predicament almost a month before the hearing and failed to utilize some alternative vehicle to present Mother's testimony to the court.

{¶10} We contrast these facts with our recent decision in *In re M/W, Children*, 1st Dist. Hamilton No. C-180623, 2019-Ohio-948, where we reversed a permanent-custody determination based upon the denial of the mother's opportunity to testify. We explained that the mother's absence there resulted from her planned transportation unexpectedly failing; she had not previously requested a continuance and had otherwise satisfactory attendance for the proceedings; and she was fully prepared to testify before the juvenile court at the objections hearing. *Id.* at ¶ 38-39. In light of the gravity of the matter, the

circumstances leading up to the mother's absence at the hearing, and the fact that the mother was poised to testify at the objections hearing, we found that the court erred when it denied her the opportunity to do so. *Id.*

{¶11} This case, however, shares few, if any, of the traits that dictated reversal in *In re M/W, Children.* Here, Mother was not unexpectedly prevented from attending because some prearranged plan fell apart at the last minute. Counsel had nearly a month's notice that the jail would not accommodate Mother's request, during which he could have either taken Mother's deposition or prepared her affidavit. Even though the court denied the continuance request in August, the record reveals that it subsequently continued the case twice, thus affording the benefit of additional time to prepare alternative means of participation for Mother. Finally, at the time of the objections hearings in February 2019, not only is there no indication that Mother was prepared to testify, but no objection was actually registered to the magistrate's denial of the continuance.

{¶12} On these facts, we see no plain error. *See In re M/W, Children* at ¶ 33 ("[A] parent's right to testify must be balanced against a trial court's ability to manage its docket * * *."). Mother had adequate opportunity to participate via deposition testimony and yet opted not to do so. Because Mother had alternative means of participation readily available, we overrule her first assignment of error.

### B.

{¶13} Mother next challenges the findings, both under R.C. 2151.414(B)(1) and the best-interest factors under R.C. 2151.414(D)(1), based on the weight and sufficiency of the evidence. Reviewing a juvenile court's grant of a motion for permanent custody requires us to independently find that the decision is supported by clear and convincing evidence. *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46 ("As an

appellate court, we do not review the juvenile court's decision under an abuse-of-discretion standard; rather, we must examine the record and determine if the juvenile court had sufficient evidence before it to satisfy the statutory clear-and-convincing standard."). A sufficiency of the evidence examination therefore requires the appellate court to determine whether the juvenile court had sufficient evidence to satisfy this clear-and-convincing standard. *In re T/R/E/M*, 1st Dist. Hamilton No. 180703, 2019-Ohio-1427, ¶ 11. Clear and convincing evidence is evidence sufficient to "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. In reviewing a weight-of-the-evidence challenge, however, we must find that the juvenile court did not lose its way in resolving conflicts in the evidence, which in turn resulted in a manifest miscarriage of justice. *In re T/R/E/M* at ¶ 11.

{¶14} R.C. 2151.414 governs the requirements for a grant of permanent custody to an agency like HCJFS. The two-step analysis requires that at least one of the factors under R.C. 2151.414(B)(1) (a) through (e) apply to the child and also that the grant of permanent custody is in the child's best interest considering all relevant factors, including those listed in R.C. 2151.414(D)(1)(a) through (e).

{¶15} Mother first contends that the magistrate erred by not specifying a finding under R.C. 2151.414(B)(1), insisting that the magistrate did not expressly consider R.C. 2151.414(B)(1)(d). That provision requires that "[t]he child has been in the temporary custody of [HCJFS] for twelve or more months of a consecutive twenty-two-month period * * *." The magistrate's decision (later adopted by the juvenile court), however, expressly notes that "[i]n July 2016, these children were removed from Mom's care * * *[.] They have

remained in the temporary custody of HCJFS to the present." The magistrate's failure here to specifically mention the statutory language is not "a per se violation of the statutory criteria as long as the judgment entry granting permanent custody supports such conclusion." (Citations omitted.) *In re K.M.,* 3d Dist. Marion Nos. 9-09-29 and 9-09-30, 2009-Ohio-6719, ¶ 14 (failure to use the statutory language of R.C. 2151.414(B)(1)(a) inconsequential when supported by the findings).

{¶16} And the record here supports such a finding. Temporary custody of the children was granted to HCJFS in July of 2016, which meant that the clock for purposes of the "12 of 22" finding began running 60 days after this grant. *See* R.C. 2151.413(D)(1); *In re A.B.,* 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 29. Thus, at the time that HCJFS moved for permanent custody in May of 2018, the children had been in HCJFS's temporary custody for a period of approximately 21-consecutive months, satisfying the requirements of R.C. 2151.414(B)(1)(d). *See In re W.W.,* 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 52-53 (clear and convincing evidence of "12 of 22" factor when magistrate made finding noting when children were removed from home and had remained there throughout the proceedings, but did not mention statutory language).

{¶17} In light of this determination under R.C. 2151.414(B)(1)(d), it obviates the need to survey any of the other R.C. 2151.414(B)(1) criteria. Regardless, Mother fails to develop in her brief any actual arguments for deficient findings under the other criteria, so we lack any additional points to evaluate.

{¶18} That brings us to the best-interest criteria, and here Mother posits that the magistrate's best-interest findings under R.C. 2151.414(D)(1) were not supported by the weight or sufficiency of the evidence. R.C. 2151.414(D)(1) directs the court, in determining the best interest of a child, to consider all relevant factors, including factors D(1)(a) through

(e) as listed in the statute. These factors include (a) the child's relationship and interaction with parents, and other relatives and caregivers, (b) the wishes of the child as expressed directly by the child or through the guardian ad litem, (c) the custodial history of the child, (d) examination of the child's need for a legally secure placement and whether that placement can be achieved without a grant of permanent custody, and (e) whether the parent has been convicted of certain enumerated offenses. R.C. 2151.414(D)(1)(a)-(e).

{¶19} In considering the best-interest factors, the magistrate's decision acknowledged Mother's progress in her case plan and that the children, in particular J.W., had expressed desire to be returned to her. At the same time, the magistrate noted that Mother relapsed after completing intensive outpatient services resulting in another referral to the program after positive screens, and that despite participation in addiction-related services, "the required changes have not been made such that she can parent her children." In other words, the court failed to see an amelioration of chronic problems.

{¶20} And the record supports these and related findings. HCJFS caseworker Niesha Cooper testified that Mother's interactions with the children during visits were problematic, including one episode where she showed up intoxicated at a home visit with the children. Ms. Cooper testified that Mother often engaged in inappropriate adult conversations with the children, which required intervention by visit facilitators. Although J.W. expressed a desire to return to Mother, he also faults himself for Mother's current predicament and believes that he shoulders the blame for the children being in HCJFS care. The guardian ad litem also expressed that a grant of permanent custody to HCJFS was in the best interest of the children, and testimony was adduced at trial to show that the children are doing well in the foster setting, with H.W. in particular making progress with certain behavioral issues.

{¶21}  The children had also been in the temporary custody of HCJFS for well over the required 12 of 22 consecutive months.  Despite Mother completing services, Ms. Cooper acknowledged Mother's inability to maintain her sobriety and that "her sporadic behavior, driving around under the influence, none of those things had stopped."  Concerns existed regarding Mother's mental health and inability to verify whether she was taking her prescribed medications. Ms. Cooper testified that Mother admitted to often driving drunk and reporting her car stolen to avoid the consequences.  During the time the children were in temporary care, Mother was involved in an accident and charged with operating a vehicle under the influence and was also incarcerated for smuggling drugs into a detention facility (which led to her being unable to attend the custody hearing).

{¶22}  While we certainly appreciate the seriousness of terminating Mother's parental rights, where the determination of the juvenile court is supported by sufficient clear and convincing evidence, and the determination was not against the manifest weight of this evidence, the juvenile court did not err.  In sum, because the denial of Mother's request for a continuance was not in error, nor the permanent-custody determination under R.C. 2151.414, we accordingly overrule Mother's two assignments of error and affirm the judgment.

Judgment affirmed.

MYERS, P.J., and CROUSE, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.