[Cite as *In re K/S Children*, 2020-Ohio-4808.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: K/S CHILDREN

:        APPEAL NO. C-200235
                      TRIAL NO. F17-1873

:

:        *O P I N I O N.*


Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 7, 2020


*Phyllis Schiff,* for Appellant Father,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Erica C. Bowen*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Megan E. Busam*, Assistant Public Defender, Guardian ad Litem for the child,

*Kacy Eaves*, for Appellee Mother.

**MYERS, Presiding Judge.**

{¶1}    Father appeals the Hamilton County Juvenile Court's judgment granting permanent custody of his child P.K. to the Hamilton County Department of Job and Family Services ("HCJFS").   Father does not challenge the sufficiency or weight of the evidence supporting the trial court's grant of permanent custody, but rather contends that the court erred by denying his request for a continuance of the permanent-custody trial.

{¶2}    The child's mother, the guardian ad litem ("GAL"), and HCJFS ask this court to affirm the juvenile court's judgment.

*Background*

{¶3}    On August 4, 2017, HCJFS received emergency custody of mother's two children, P.K. and P.S., following mother's arrest for possession of fentanyl.   On August 7, HCJFS filed a motion for interim custody of the children and a complaint for temporary custody, alleging that the children were dependent, neglected, and abused.   In both the motion and the complaint, HCJFS named mother's boyfriend J.S. as the alleged father of both P.K. and P.S.   (J.S. is identified on P.S.'s birth certificate as P.S.'s father.)   At a hearing on the same day, mother alleged that father, not J.S., was P.K.'s father.   The GAL reported that father was incarcerated at the Putnamville Correctional Facility in Indiana.   The juvenile court magistrate granted interim custody to HCJFS and ordered service on father.

{¶4}    On August 22, 2017, the magistrate noted that the court received a letter from father requesting that counsel be appointed for him.   On September 5, the magistrate appointed counsel for father.

{¶5}    On October 17, 2017, counsel for father appeared at a pretrial hearing.   On October 23, HCJFS filed an amended complaint for temporary custody, identifying father as P.K.'s father.

{¶6} On November 30, 2017, the GAL filed a dispositional recommendation report which noted that father was incarcerated in Indiana on burglary convictions and that his earliest release date would be February 21, 2018. The GAL recommended that temporary custody of P.K. be granted to HCJFS, noting that upon his release, father should be required to provide access to HCJFS and the GAL, to engage in paternity testing and a diagnostic assessment, and to obtain and maintain stable housing and income.

{¶7} Counsel for father appeared at two different hearings in December 2017 and January 2018, both of which were continued.

{¶8} On January 22, 2018, HCJFS filed an amended complaint for temporary custody. On February 22, counsel for father appeared at a hearing and reported that he had not heard from father, despite several attempts to contact him. The magistrate allowed counsel to withdraw from representing father. The magistrate noted that father had been notified of the hearing by mail. The magistrate adjudicated P.K. and her sibling P.S. abused, dependent, and neglected, and awarded temporary custody to HCJFS.

{¶9} On February 23, 2018, the magistrate placed of record the court's receipt of a letter from father. Father reported that he was no longer at the Putnamville Correctional Facility in Indiana, and that he had been moved to Indiana State Prison. Father provided his new mailing address.

{¶10} On March 29, 2018, the magistrate placed of record the court's receipt of a letter from father that requested counsel. In his letter, father stated that he had taken a D.N.A. test with respect to P.K., and was awaiting the results. On April 16, the magistrate appointed counsel for father.

{¶11} Counsel for father appeared at a hearing on July 16, 2018, after which the magistrate granted HCJFS an extension of temporary custody of P.K. and her

sibling. The magistrate noted that father and mother were both incarcerated at that time.

{¶12} On October 16, 2018, the magistrate conducted a review hearing, at which father's counsel was present. Genetic test results confirmed father as the biological father of P.K. The magistrate noted that father might soon be released from incarceration and that HCJFS requested that he complete a diagnostic assessment, follow all recommendations, participate in supervised visitation, and obtain stable housing and income.

{¶13} On January 11, 2019, the magistrate conducted an annual review hearing at which father's counsel appeared. The magistrate noted that the children remained stable in foster care.

{¶14} On February 20, 2019, the magistrate conducted a hearing at which father's counsel appeared. The magistrate noted that father had been released from prison and had had contact with mother. The magistrate stated, "[Father] declined to meet with his parole officer and does not have stable housing. None of the parties have contact information for [father]. [Father's counsel] has attempted to contact [father] but has been unsuccessful." The magistrate allowed father's counsel to withdraw from representation and granted HCJFS's motion for an extension of temporary custody.

{¶15} On May 22, 2019, the magistrate conducted a review hearing that father did not attend despite having been notified. The magistrate found that father had neither visited P.K. nor engaged in any case-plan services.

{¶16} On July 10, 2019, HCJFS filed a motion to modify temporary custody to permanent custody. An August pretrial hearing was continued because father had not been served with notice of the hearing.

{¶17} On October 7, 2019, the magistrate conducted a pretrial hearing, noting that father was currently incarcerated in Indiana. The magistrate ordered

4

HCJFS to serve him with the permanent-custody motion. On October 16, 2019, the magistrate appointed counsel for father.

{¶18} On November 5, 2019, the magistrate conducted a pretrial hearing at which father's counsel appeared. The matter was continued for another pretrial hearing to December 9, 2019, and for a trial on the permanent-custody motion on January 29, 2020.

{¶19} On December 3, 2019, father filed a "motion to appear by teleconference and motion to object to modify to permanent custody." Father noted that he was currently incarcerated in Indiana until July 18, 2020, with the possibility of home detention beginning January 18, 2020. He requested that the court order his presence for both hearings by teleconference. He asserted that he wanted to regain custody of P.K., that he objected to permanent custody, and that he had had no contact with his court-appointed lawyer. On December 9, 2019, father's counsel appeared at the scheduled pretrial hearing. The magistrate granted father's motion to appear by teleconference at the trial on January 29, 2020.

{¶20} On January 28, 2020, the GAL filed a report recommending that permanent custody be granted to HCJFS. The GAL stated that father "has been mostly incarcerated for the duration of this case and thus has not participated in any services or visited with [P.K.]." The GAL stated that P.K. had never met, spoken to, or visited with father, and therefore, had no relationship with him. The GAL stated that P.K. wished to live with mother and J.S., or in the alternative, to remain with her foster parents. The GAL noted that P.K. and her sibling had been in custody since August 4, 2017, and that they had been in the same foster home since that time.

{¶21} On January 29, 2020, the magistrate conducted a hearing at which father's counsel was present and father was present by video conference. Mother had executed a voluntary permanent surrender of both P.K. and P.S., and J.S. had

done the same for P.S., and the magistrate, after conducting colloquies with mother and J.S., accepted their voluntary surrenders.

{¶22} Father's counsel asked that the trial be continued because he had experienced delays in arranging to speak to father about potential legal custodians for P.K. Father had provided counsel with the name of a woman whom he described as a family friend (and who we refer to as "A.H."). A.H. told counsel that she wanted to file for legal custody, and that when she went to the clerk's office to file the appropriate paperwork, she was informed a filing fee was required. A.H. believed that precluded her from being able to appear at the hearing. Counsel told her that that was not necessarily the case, as the clerk's office should waive the filing fee on the case. He asked the court for a continuance to allow A.H. to assert her interest in obtaining custody of P.K.

{¶23} The GAL, counsel for the children, counsel for mother, and HCJFS objected to the continuance. The magistrate denied father's request for a continuance and proceeded with the trial.

{¶24} At trial, HCJFS offered mother's permanent surrender of P.K. into evidence, as well as the testimony of P.K.'s foster mother and an HCJFS caseworker. Father's counsel cross-examined the state's witnesses, and father testified in his own behalf. The magistrate issued a decision granting permanent custody of P.K. to HCJFS.

{¶25} Father filed an objection to the magistrate's decision, arguing that an award of permanent custody was against the weight of the evidence. The trial court overruled father's objection, adopted the magistrate's decision, and granted permanent custody of P.K. to HCJFS. Father now appeals.

*Denial of Continuance*

{¶26}  Father raises a single assignment of error, arguing that the juvenile court erred by denying his motion for a continuance of the permanent-custody trial in violation of his rights to due process.

{¶27}  When evaluating a motion for a continuance, a trial court should conduct "a balancing test which takes cognizance of all the competing considerations," including "any potential prejudice to a defendant" and "concerns such as a court's right to control its own docket."  *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981).  Specifically, the court should consider, among other things:

> the length of the delay requested; whether other continuances have
> been requested and received; the inconvenience to litigants, witnesses,
> opposing counsel and the court; whether the requested delay is for
> legitimate reasons or whether it is dilatory, purposeful, or contrived;
> whether the defendant contributed to the circumstance which gives
> rise to the request for a continuance; and other relevant factors,
> depending on the unique facts of each case.

*Id.* at 67-68.

{¶28}  We typically review a denial of a continuance under an abuse-of-discretion standard, *In re J/B Children*, 1st Dist. Hamilton No. C-190651, 2020-Ohio-1085, ¶ 8, but father did not object to the magistrate's decision on this basis and has waived all but plain error. *See* Juv.R. 40(D)(3)(b)(iv); *In re J.W. and H.W.*, 1st Dist. Hamilton No. C-190189, 2019-Ohio-2730, ¶ 7.  The Supreme Court of Ohio has explained that:

> in recognizing plain error in a civil case, a court must proceed with
> utmost caution, limiting use of the doctrine to "the extremely rare case

involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."

*Jones v. Cleveland Clinic Found.*, Slip Opinion No. 2020-Ohio-3780, ¶ 24, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

{¶29} Father has failed to establish that plain error occurred. In permanent-custody cases, due process requires that a parent have notice and an opportunity to be heard before his or her parental rights are terminated. *In re J.W. and H.W.* at ¶ 8. Father was represented by counsel who actively participated at trial, and father was present at trial through video conference and provided testimony.

{¶30} The record shows that in denying father's request for a continuance, the magistrate balanced father's interests and the interests of his child who was in need of permanency. P.K. and her sibling had been in custody for over two years and father had been represented by various attorneys in that time. The children had been with the same foster parents for the entire period, and the foster parents wanted to adopt them. Father had not visited P.K. in over four years. Father had waited to propose A.H., a nonrelative, as a potential custodian until shortly before the trial date even though the permanent-custody motion had been filed six months earlier. The magistrate pointed out that the court does not charge a filing fee for petitioners in active dependency cases and that, even if A.H. had mistakenly been informed of a filing fee, she did not appear for trial and no reason was given for her absence.

{¶31} Following our review of the record, we hold that father has failed to demonstrate that the denial of his motion for a continuance was plain error. *See id.* (incarcerated mother could not satisfy the high showing needed to establish plain error where she was represented by counsel at the custody hearing and failed to take

advantage of alternative means of participating in the hearing). Therefore, we overrule the assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**BERGERON** and **CROUSE, JJ.,** concur.

Please note:

The court has recorded its own entry this date.