**[Cite as *In re J.L.*, 2024-Ohio-850.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| IN RE: J.L. and C.L. | : | APPEAL NO.  C-230140<br>TRIAL NO.    F21-219Z |
|  | : |  |
|  | : | *O P I N I O N.* |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 8, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Michelle Browning*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Kathleen A. Kenney*, Assistant Public Defender, for Appellee Guardian ad Litem,

*Christopher P. Kapsal*, for Appellant Mother.

**CROUSE, Judge.**

{¶1}   Appellant mother A.L. appeals from the decision of the juvenile court placing her two children, C.L. and J.L., in the permanent custody of the Hamilton County Department of Job and Family Services ("HCJFS"). HCJFS was granted emergency custody of the children after J.L. tested positive at birth for methadone, methamphetamine, and fentanyl. Because mother has not demonstrated long-term stability and sobriety, as required by her case plan, we affirm the decision of the juvenile court.

## I. Procedural and Factual History

{¶2}   J.L. was born in January 2021. At the time of J.L.'s birth, A.L. and J.L. both tested positive for methadone,[1] methamphetamine, and fentanyl. A.L. claimed that she had been engaged in substance-abuse treatment during her pregnancy, but admitted that she continued to use illegal substances.

{¶3}   HCJFS began a safety plan for J.L. and her then-ten-year-old brother C.L. Under the safety plan, the children's maternal grandmother would provide supervision of the children while they remained in their home with their parents. A.L. completed a diagnostic assessment of functioning, which recommended intensive outpatient treatment for opioid use disorder; severe, amphetamine-type use disorder; severe, major depressive disorder; and alcohol use disorder.

{¶4}   A.L. did not submit to drug screenings as scheduled in February and March 2021, nor did she begin treatment. When HCJFS, accompanied by police, conducted an unannounced wellness check on March 10, maternal grandmother had

---

[1] Methadone is a medication used to treat opioid use disorder. *See Substance Abuse and Mental Health Services Administration*, What Is Methadone? (Feb. 5, 2024), https://www.samhsa.gov/medications-substance-use-disorders/medications-counseling-related-conditions/methadone (accessed Feb. 12, 2024).

left the home. A.L. did not allow HCJFS to conduct the wellness check, nor did she allow maternal grandmother access to the home. In response, HCJFS requested and was granted emergency custody of both children.

{¶5} Following an adjudication hearing in April 2021, J.L. was adjudicated abused, and C.L. and J.L. were adjudicated dependent. At the subsequent dispositional hearing, the children were placed in the temporary custody of HCJFS.

{¶6} In the following months, A.L.'s participation in substance-abuse treatment was sporadic. A.L. participated in several different programs without successfully completing any prior to the March 2023 permanent-custody hearing. A.L. tested positive for methamphetamines in June 2021 and missed several screenings ordered by HCJFS in the first half of 2021. In September 2021, a hair-follicle test showed a positive result for fentanyl. A.L. subsequently refused to cooperate with HCJFS drug screenings, with limited exceptions. A.L. provided a negative urine test in April 2022, but refused to provide a hair-follicle sample. A.L. subsequently tested positive for fentanyl in August 2022, and she was positive for alcohol, amphetamines, and methamphetamines in September 2022. In November 2022, emergency services were dispatched to A.L.'s home to respond to a report of an unconscious woman suspected of having overdosed. First responders found A.L. unconscious and administered Narcan, which caused A.L. to regain consciousness.[2]

{¶7} HCJFS received no documentation of A.L. engaging in any mental-health services, as recommended by her case plan.

{¶8} A.L. was fairly consistent with her visitation with her children at the

---

[2] Narcan is a brand name of the drug naloxone. *See* National Institute on Drug Abuse, Naloxone DrugFacts (Jan. 2022), https://nida.nih.gov/publications/drugfacts/naloxone (accessed Feb. 12, 2024). It is "a medicine that rapidly reverses an opioid overdose." *Id.* Notably, "naloxone has no effect on someone who does not have opioids in their system." *Id.*

Family Nurturing Center ("FNC"). Her caseworker reported no concerns with her parenting skills based on the supervised visits. However, despite repeated requests from the FNC facilitator that A.L. not engage C.L. in discussions about topics such as the ongoing dependency case, A.L.'s financial situation, and speculation about the inaccuracy of drug testing, A.L. insisted on engaging in such conversations with C.L.

**{¶9}** At the permanent-custody hearing in February 2023, HCJFS caseworker Barry Drizin testified that he had no concerns about A.L.'s housing or employment. However, A.L. had not provided any documentation about successful completion of a substance-abuse treatment program, nor had A.L. engaged in any mental-health treatment.

**{¶10}** A.L. testified that she had attended multiple treatment programs, but none for more than a few months. At the time of the hearing, she was in the Gateways program, which is affiliated with Talbert House. A.L. testified that the Gateways program is the one that she has most connected with and has learned the most from. A clinical counselor from Talbert House testified that A.L. first came to her for an assessment in December 2022. Since that time, A.L. had been compliant with the goals of the program. A.L. also produced documentation of clean urine screenings for drugs from multiple dates in January and February 2023.

**{¶11}** Following the permanent-custody hearing, the magistrate entered a decision granting HCJFS's motion for permanent custody in March 2023. Through his *In re Williams* attorney, C.L. filed an objection to the magistrate's decision. *See In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110. Specifically, C.L. argued that the magistrate's decision was against the manifest weight of the evidence.

**{¶12}** Shortly after C.L. filed his objection, A.L.'s attorney filed a notice of

appeal. This court stayed the appeal and remanded the cause for the juvenile court to rule on C.L.'s objection.

**{¶13}** In August 2023, the juvenile court held an objection hearing. At the hearing, A.L.'s attorney joined C.L.'s objection. The juvenile court overruled the objection. This court then lifted the stay on the appeal.

## II. Analysis

**{¶14}** In her sole assignment of error, A.L. argues that the juvenile court abused its discretion when it found that placing her children in the permanent custody of HCJFS was in the best interest of the children because the court's decision was not supported by sufficient evidence and was against the manifest weight of the evidence.

**{¶15}** A.L. contends that the juvenile court "abused its discretion" in reaching its permanent-custody decision. However, the Ohio Supreme Court has recently clarified that an appellate court does not review the juvenile court's decision on permanent custody for an abuse of discretion. *In re Z.C.*, Slip Opinion No. 2023-Ohio-4703, ¶ 17. The statute that governs the juvenile court in granting permanent custody of a child to a children services agency requires the court to determine that permanent custody is in the best interest of the child "by clear and convincing evidence." R.C. 2151.414(B)(1). Accordingly, an appellate court reviews the juvenile court's decision for the legal sufficiency of the evidence and/or the manifest weight of the evidence, depending on the arguments presented by the parties. *In re Z.C.* at ¶ 11.

**{¶16}** A.L. did not file objections to the magistrate's decision in the juvenile court. Instead, A.L. filed a premature notice of appeal. However, C.L. did file an objection, and A.L. joined C.L. in that objection at the hearing. A.L. addresses her

failure to strictly comply with Juv.R. 40(D)(3)(b) in her brief, but she argues that the essential purpose of the rule has been satisfied because C.L. raised the objection, and it was heard and ruled on by the juvenile court. *See Cecil v. Cottrill*, 67 Ohio St.3d 367, 372, 618 N.E.2d 133 (1993), quoting *Peterson v. Teodosio*, 34 Ohio St.2d 161, 175, 297 N.E.2d 113 (1973) ("The spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies.").

{¶17} Under the present circumstances where A.L. filed a premature notice of appeal from the magistrate's decision, C.L. timely filed an objection to the magistrate's decision, and A.L. joined C.L.'s objection at the hearing, the purpose of Juv.R. 40(D) in requiring an appellant to raise her arguments by objection to the juvenile court before assigning error is satisfied. In order to "effect the just determination" of the proceeding before us, Juv.R. 1(B)(1), we entertain A.L.'s appeal within the scope of C.L.'s objection. Because C.L. objected only to the manifest weight of the evidence, and not to the sufficiency of the evidence, under Juv.R. 40(D)(3)(b)(iv), we consider only A.L.'s manifest-weight argument.

{¶18} When we review the manifest weight of the evidence supporting the juvenile court's decision, we "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, Slip Opinion No. 2023-Ohio-4703, at ¶ 14, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. We are to "always be mindful of the presumption in favor of the finder of fact." *Id.*, quoting *Eastley* at ¶ 21.

{¶19} R.C. 2151.414(B) provides that the juvenile court may grant permanent

custody of a child to a public children services agency if it finds by clear and convincing evidence that (1) permanent custody is in the child's best interest and (2) that one of the conditions in R.C. 2151.414(B)(1)(a) through (e) applies. *In re M., R., & H. Children*, 1st Dist. Hamilton No. C-170008, 2017-Ohio-1431, ¶ 17. "To determine the best interests of the child, the court must consider all relevant factors within R.C. 2151.414(D)(1)." *In re Z.*, 1st Dist. Hamilton No. C-190026, 2019-Ohio-1617, ¶ 18.

**{¶20}** At the time HCJFS filed its motion for permanent custody, the children had been in the custody of HCJFS for 14 consecutive months. This satisfies the 12-of-22 standard under R.C. 2151.414(B)(1)(d).

**{¶21}** In evaluating the best interest of the child, the court must consider all of the enumerated factors under R.C. 2151.414(D)(1), and "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re K.T.1*, 1st Dist. Hamilton Nos. C-170667, C-170687, C-170701, C-170702, and C-170707, 2018-Ohio-1381, ¶ 13, quoting *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56.

**{¶22}** Under R.C. 2151.414(D)(1)(a), the juvenile court considered the relationships between the children and their mother, and the children and the foster family. The court found that A.L. had consistently visited the children and has maintained a positive relationship with them. The HCJFS caseworker testified that the children were bonded with A.L.

**{¶23}** The court also found that the children had been living with the same foster parents throughout their time in HCJFS custody and had made a positive adjustment to living in the foster home. The foster parents desire to adopt C.L., and the foster parents' adult daughter wishes to adopt J.L.

{¶24} Under R.C. 2151.414(D)(1)(b), the juvenile court found that C.L. wished to be reunited with A.L., as relayed by his *In re Williams* attorney. J.L. is too young to express her custodial wishes. The children's guardian ad litem supports granting permanent custody to HCJFS.

{¶25} Under R.C. 2151.414(D)(1)(c), the juvenile court considered the custodial history of the children. At the time of the permanent-custody trial, the children had been in custody of HCJFS for more than two years. C.L. had lived with A.L. for most of his life prior to the current period of HCJFS custody. J.L. has been in HCJFS custody since birth.

{¶26} Under R.C. 2151.414(D)(1)(d), the juvenile court considered the children's need for a legally secure placement. A legally secure placement refers to more than just a roof over one's head. Rather, a legally secure placement " 'encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs.' " *In re P. & H.*, 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 42, quoting *In re K.W.*, 2018-Ohio-1933, 111 N.E.3d 368, ¶ 87 (4th Dist.). The juvenile court found that no other relatives could provide a permanent placement option for the children. A.L. has not completed a substance-abuse treatment program, nor has she demonstrated long-term stability and sobriety, as required by her case plan.

{¶27} Under R.C. 2151.414(D)(1)(e), the juvenile court considered the factors under divisions (E)(7) to (11). The juvenile court found that the children's father had abandoned them, under R.C. 2151.414(E)(10). None of the other factors apply.

{¶28} Considering all of the best-interest factors and the evidence supporting them, it does not appear that the juvenile court "lost its way and created such a

manifest miscarriage of justice in resolving conflicts in the evidence that its judgment must be reversed." *See In re J.W. and H.W.*, 1st Dist. Hamilton No. C-190189, 2019-Ohio-2730, ¶ 13; *In re Z.C.*, Slip Opinion No. 2023-Ohio-4703, at ¶ 14. Accordingly, we overrule A.L.'s sole assignment of error.

### *III. Conclusion*

**{¶29}** We affirm the judgment of the juvenile court.

Judgment affirmed.

**BOCK, P.J.,** and **BERGERON, J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.